STATE ex rel. COLLECTOR OF WIN-
CHESTER, Missouri and City of Win-
chester, Missouri, Relators,

v.

The Honorable Michael T. JAMISON,
Respondent.

No. SC 91631.

Supreme Court of Missouri,
En Banc.

Jan. 17, 2012.

John W. Hoffman and Douglas R. Sprong of Korein Tillery LLC in St. Louis, John F. Mulligan Jr., Clayton and Howard Paperner, St. Louis, for The City.

Cynthia L. Hoemann, Associate County Counselor in Clayton and James H. White, Special Assistant County Counselor, St. Louis, for St. Louis County.

Robert P. Berry, Jessica W. Kennedy and David C. Baxter, Berry & Maxson LLC, St. Louis, Eric S. Tresh, Sutherland, Asbill & Brennan LLP, Atlanta, for Charter Communications.

The Attorney General's Office, Jefferson City, for The state.

LAURA DENVIR STITH, Judge.

The city of Winchester and its collector ("Winchester") petition this Court to issue a writ of mandamus or prohibition compelling the circuit court to vacate its order striking and dismissing Winchester's class action claims in its suit against Charter Communications.[1] The court struck Winchester's class claims on the basis of section 71.675, RSMo Supp.2009,[2] which bars cities and towns from serving as class representatives in suits to enforce or collect business license taxes imposed on telecommunications companies.

In seeking a writ, Winchester argues that because it otherwise meets the re-

---

1. Suit was filed against Charter Communications, Inc.; Charter Communications, LLC; and Charter Fiberlink—Missouri, LLC; hereafter, these three entities will be referred to collectively as "Charter."

2. All statutory references are to RSMo Supp. 2009 unless otherwise noted.

quirements for serving as a class representative in suits against telecommunications companies under Rule 52.08, by enacting section 71.675, the legislature has changed the requirements for serving as a class representative as set out in that rule. Missouri's constitution permits the legislature to amend a procedural rule of this Court, such as Rule 52.08, which governs class actions, only "by a law limited to the purpose" of so doing. *Mo. Const. art. V, § 5.* Section 71.675 was not limited to amending Rule 52.08 and did not mention it by name. Where, as here, a statute and the constitution conflict, this Court has no choice but to strike down the statute. *Farmer v. Kinder,* 89 S.W.3d 447, 452 (Mo. banc 2002). For this reason, the court exceeded its authority in striking Winchester's class action allegations pursuant to section 71.675.[3] The preliminary writ of prohibition is quashed, and a permanent writ of mandamus is issued directing the trial court to vacate its order striking Winchester's class action allegations.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2010, Winchester filed a class action lawsuit against Charter on behalf of itself and other similarly situated Missouri municipal corporations and political subdivisions.[4] Winchester seeks a declaratory judgment requiring Charter and other telephone service providers to comply with validly enacted municipal ordinances that require them to pay a license tax on gross receipts derived from various fees and services connected to their operations[5] and an order requiring Charter to pay all license taxes owed to the class.

In October 2010, Charter moved to strike Winchester's class action claims pursuant to section 71.675, which states in relevant part:

Notwithstanding any other provision of law to the contrary, no city or town shall bring any action in federal or state court in this state as a representative member of a class to enforce or collect any business license tax imposed on a telecommunications company. A city or town may, individually or as a single plaintiff in a multiple-plaintiff lawsuit, bring an action in federal or state court in this state to enforce or collect any business license tax imposed on a telecommunications company.

*§ 71.675.1.*

In February 2011, the trial court granted Charter's motion to strike based on its

---

3. Given this Court's resolution of the first ground for relief, it is unnecessary to reach the additional constitutional questions raised by Winchester as to whether section 71.675 is an unconstitutional special law or was contained in a bill compliant with the requirement of article III, section 23 of the Missouri Constitution that bills must contain only one subject that is clearly expressed in the bill's title.

4. According to Winchester, those similarly situated entities are:
   [A]ll cities or other political subdivisions [that] have adopted an ordinance in effect that imposes a business or occupational license tax on any person engaged in the business of supplying or furnishing telephone service (including exchange telephone service) in the city or political subdivision, or who is otherwise engaged in a telephone business therein.

5. Specifically, Winchester alleges that Charter has failed to pay license taxes on gross receipts derived from exchange access, interexchange access, special access, interconnection facilities and equipment for use, toll or long-distance, reciprocal compensation arrangements, Federal Universal Service Fund surcharges, State Universal Service Fund surcharges, End User Common Line charges, intrastate telephone service and other sources. Gross receipts are "all receipts from the retail sale of telecommunications service taxable under section 144.020 and from any retail customer now or hereafter exempt from the state sales tax." *§ 92.083.1(1).*

belief that section 71.675 concerns the substantive issue of standing rather than the procedural issue of satisfying the requirements for serving as a class representative. In May 2011, this Court granted Winchester's petition for a preliminary writ of prohibition. That writ is now quashed, and a permanent writ of mandamus is ordered to issue.

## II. STANDARD OF REVIEW

■■ This Court has the authority to "issue and determine original remedial writs." Mo. Const. art. V, § 4.1. "The standard of review for writs of mandamus and prohibition . . . is abuse of discretion." State ex rel. City of Jennings v. Riley, 236 S.W.3d 630, 631 (Mo. banc 2007). Mandamus will lie where a court "has acted unlawfully or wholly outside its jurisdiction or authority or has exceeded its jurisdiction, and also where it has abused whatever discretion may have been vested in it." State ex rel. Office of Pub. Counsel v. Pub. Serv. Comm'n, 236 S.W.3d 632, 635 (Mo. banc 2007) (quotation omitted). "Mandamus does not issue except in cases where the ministerial duty sought to be coerced is definite, arising under conditions admitted or proved and imposed by law." Furlong Cos., Inc. v. City of Kansas City, 189 S.W.3d 157, 166 (Mo. banc 2006). "A litigant . . . must allege and prove that he has a clear, unequivocal specific right to a thing claimed. He must show himself possessed of a clear and legal right to the remedy." Id.

## III. THE TRIAL COURT EXCEEDED ITS AUTHORITY WHEN IT STRUCK WINCHESTER'S CLASS ACTION CLAIMS

### A. Requirements of Missouri's Constitution for Amending Procedural Rules

Rule 52.08 is a rule promulgated by this Court pursuant to article V, section 5 of the Missouri Constitution, which states in pertinent part:

> The supreme court may establish rules relating to practice, procedure and pleading for all courts and administrative tribunals, which shall have the force and effect of law.

Mo. Const. art. V, § 5. To effectuate the authority Missouri's constitution vests in this Court, the Court has promulgated Rules of Civil Procedure 41 to 101. As Rule 41.02 notes, these rules, promulgated pursuant to article V, section 5 of the constitution, "supersede all statutes and existing court rules inconsistent therewith." Rule 41.02.

■■ The very constitutional provision giving this Court the authority to establish procedural rules that have the force and effect of law also provides the legislature with a specific mechanism for modifying those rules by providing that "[a]ny rule may be annulled or amended in whole or in part by a law limited to the purpose." Mo. Const. art. V, § 5. Although the legislature thereby is given the authority to annul or amend procedural rules created by the Court, "[t]he constitutional prescription of the manner in which the General Assembly must act is of pristine importance." State ex rel. K.C. v. Gant, 661 S.W.2d 483, 485 (Mo. banc 1983). The constitution, therefore, in no way "limit[s] or constrict[s] the power of the General Assembly. Its power is plenary, so long as it follows the constitutional procedure." Id. "A law, to qualify as one 'limited to the purpose' of amending or annulling a rule, must refer expressly to the rule" and be limited to the purpose of amending or annulling it. Id.

The General Assembly is well aware of how to comply with the requirement of

article V, section 5 when exercising its constitutional authority to annul or amend procedural rules. In 1984, for example, the legislature enacted a law "to amend supreme court rule 54.22 ... relating to process, return or proof of service." *Act of June 7, 1984, enacting H.B. 947, 82d Gen. Assem., 2d Reg. Sess. (Mo.1984); 1984 Mo. Laws 792.* The law specifically referred to the rule it was amending and was limited to that purpose, containing nothing more than a statement that Rule 54.22 was being amended and the language of the new rule.

In other instances, a law purporting to annul or amend a procedural rule of this Court has not been enacted in compliance with the requirements of article V, section 5, forcing this Court to strike down the statute. For example, in *Gant*, 661 S.W.2d at 485, at issue was Rule 127.05, which then *entitled* a minor or the minor's guardian to a hearing if certain requirements were met. The legislature enacted a bill purporting to give the juvenile court *discretion* whether to hold the hearing. *Act of June 17, 1980, enacting S.B. 512, 80th Gen. Assem., 2d Reg. Sess. (Mo.1980); 1980 Mo. Laws 331–37.* But, that law failed to comply with article V, section 5 because it was not contained in a bill limited to that purpose, nor did the bill expressly refer to the rule at all. *Id.* (making no mention of the pertinent rule and also addressing other issues related to the juvenile court system).

Similarly, in *State v. Reese*, 920 S.W.2d 94 (Mo. banc 1996), this Court held that a rule governing the procedures for substitution of a deceased party prevailed over a conflicting statute concerning the same issue because "[t]he General Assembly [had] not passed a law limited to the purpose of annulling or amending" the rule at issue. *Id.* at 95–96. Instead, the conflicting statutory provision had been part of a massive piece of legislation revising numerous previous statutes related to trusts and estates. *Act of July 14, 1983, enacting S.B. 44 and 45, 82d Gen. Assem., 1st Reg. Sess. (Mo. 1983); 1983 Mo. Laws 804–906.* Further, the law once again made no mention of the conflicting rule. *Id.*

### B. Rule 71.675 Fails to Comply with Missouri Constitutional Requirements for Amending Procedural Rules

■ It is these principles that govern this Court's resolution of the question of whether section 71.675's purported limitation on the right of cities and towns to sue telecommunications companies is constitutionally valid. Winchester argues that it is not because it silently amends Rule 52.08. That rule, which is denominated "Class Actions," specifically delineates the requirements and qualifications for filing class action lawsuits:

> One or more members of a class may sue or be sued as parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) *the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.*

*Rule 52.08(a)* (emphasis added).

For present purposes, it is not contested that Winchester's claims and defenses are typical of those of the class or that Winchester fairly and adequately will protect the interests of the class. But section 71.675 would preclude Winchester from serving as class representative nonetheless by effectively adding a fifth requirement: "(5) the class representative is not a city or town if the defendant is a telecommunications company." Section 71.675 thereby amends Rule 52.08(a) by adding an addi-

tional requirement to those already set forth for being a class representative. Now, in addition to a class representative being required to show that it has typical claims and defenses and that it will fairly and adequately represent the class, it must show that it is not in the excluded category of being a city or town where the defendant is a telecommunications company.

■ Such an amendment to this Court's rules would be permissible under article V, section 5 "if amended in whole or in part by a law limited to the purpose." *Mo. Const. art. V, § 5*. But here, as in *Gant* and *Reese*, the General Assembly failed to follow the procedures specifically prescribed by article V, section 5 for amending a rule of this Court. Section 71.675 was included in House Bill 209, which was passed in 2005. *Act of July 14, 2005, enacting H.B. 209, 93rd Gen. Assem., 1st Reg. Sess. (Mo.2005); 2005 Mo. Laws 429–41*. The law that contained section 71.675 was not limited to the purpose of amending Rule 52.08; rather, it contained some 18 provisions amending various other statutes and laws.[6] Neither did it contain any language expressly stating that the legislature wished to amend Rule 52.08. Indeed, the law encompassing section 71.675 made no mention whatsoever of Rule 52.08. *Id.* "Supreme Court rules govern over contradictory statutes in procedural matters unless the General Assembly specifically annuls or amends the rules in a bill limited to that purpose." *Ostermueller v. Potter*, 868 S.W.2d 110, 111 (Mo. banc 1993). Section 52.08, rather than section 71.675, governs whether Winchester may serve as a class representative.

*C. Section 71.675 Does Not Affect a City's Standing to Sue*

■ Charter does not contest the settled law governing how the legislature may amend a procedural rule of this Court. Instead, it argues that section 71.675 does not affect the procedure by which a city can bring suit but rather affects substantive law by depriving cities and towns of *standing* to act as class representatives when suing telecommunications companies for taxes. Because the Court's rules "shall not change substantive rights," *Mo. Const. art. V, § 5*, Charter argues that as a substantive law related to standing, section 71.675 prevails over Rule 52.08.

■ Charter's argument is without merit. Standing is a question of whether "the parties seeking relief . . . have some personal interest at stake in the dispute." *Ste: Genevieve Sch. Dist. R–II v. Bd. of Alderman of the City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). The personal interest at stake must be one that is "legally protectable." *Battlefield Fire Protection Dist. v. City of Springfield*, 941 S.W.2d 491, 492 (Mo. banc 1997). A legally protectable interest exists if the plaintiff is affected directly and adversely by the challenged action or if the plaintiff's interest is conferred statutorily. *Id.*

Here, there is no question that Winchester and other similarly situated cities and towns have a legally protectable interest at stake in the dispute. Winchester argues on behalf of itself and other municipalities that Charter has failed to pay taxes derived from its operations in these cities and towns as required by their municipal ordinances. This legally protectable interest in recouping taxes allegedly owed to the municipalities confers standing on them. Indeed, section 71.675 itself so recognizes, for it provides that "[a] city or town may, individually or as single plaintiff in a multiple-plaintiff lawsuit, bring an ac-

---

**6.** Several of those provisions were invalidated by this Court in *City of Springfield v. Sprint Spectrum, L.P.*, 203 S.W.3d 177 (Mo. banc 2006).

tion in federal or state court in this state to enforce or collect any business license tax imposed on a telecommunications company." *§ 71.675.1.* Cities and towns would not be able to sue in this manner if they did not have standing.

What section 71.675 purports to take from cities and towns therefore is not their personal interest in the proceedings or their standing to sue but rather their right to do so as a representative of other cities and towns in suits against telecommunications companies. Contrary to the arguments of Charter and of the dissent, this is not a matter of standing but of authority or qualification to sue in a representative capacity.[7] As this Court has explained:

> Procedural law prescribes a method of enforcing rights or obtaining redress for their invasion; substantive law creates, defines and regulates rights; the distinction between substantive law and procedural law is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit.

*Wilkes v. Missouri Highway and Transp. Comm'n,* 762 S.W.2d 27, 28 (Mo. banc 1988).

Statutes dealing merely "with the *means* by which the parties may assert their underlying rights," but not otherwise defining "the *nature or the extent* of the underlying rights," are procedural. *Gant,* 661 S.W.2d at 485 (emphases added). As a

statute governing the "machinery [to be] used for carrying on the suit," *Wilkes,* 762 S.W.2d at 28, and prescribing the *means* by which cities and towns may assert their rights, this Court's precedent instructs that section 71.675 is procedural, *Gant,* 661 S.W.2d at 485.

## IV. CONCLUSION

For the reasons set forth above, the trial court exceeded its authority in striking Winchester's class claims on the basis of section 71.675's purported bar on cities and towns serving as class representatives in suits to enforce or collect business license taxes imposed on telecommunications companies. That statute violates article V, section 5 of the Missouri Constitution because it amends a procedural rule of this Court, Rule 52.08(a), governing who can bring class actions, but fails to do so in a law limited to that purpose as required by article V, section 5 of Missouri's constitution. This Court quashes its preliminary writ of prohibition and orders a permanent writ of mandamus to issue.

TEITELMAN, C.J., RUSSELL, BRECKENRIDGE and FISCHER, JJ., and ASEL, Sp.J., concur.

PRICE, J., dissents in separate opinion filed.

DRAPER, J., not participating.

---

7. The dissent suggests that the legislature purported to take from municipalities the authority to sue in a representative capacity because of a concern that this would be an unwise expenditure of public funds. While this might be an appropriate reason for the legislature to deny the right to sue in a representative capacity to municipalities, it must do so in a statute devoted solely to that purpose as required by the Constitution. In any event, the fact that the statute permits municipalities to sue as class representatives in all instances except those in which a defendant is a telecommunications company suggests that the legislature has not decided that it is unwise for municipalities to sue in a representative capacity. Winchester clearly believes that this is a good use of its tax dollars, as it suggests that absent the availability of use of a class action, municipalities would be unable to afford to seek payment of such taxes.

WILLIAM RAY PRICE, JR., Judge.

I respectfully dissent. Chapter 71 of the Missouri Revised Statutes sets out a number of provisions relating to the powers and responsibilities of cities and towns in Missouri. Section 71.675, RSMo Supp. 2009, precludes Missouri cities and towns from bringing "any action in federal or state court in this state as a representative member of a class...." Establishing the powers and responsibilities of Missouri municipalities traditionally and particularly has been a power of the legislature.

Municipalities are creatures of the legislature. *Anderson v. City of Olivette,* 518 S.W.2d 34, 39 (Mo.1975). As such, the state retains control over the governmental functions of cities and towns. *Tietjens v. City of St. Louis,* 359 Mo. 439, 222 S.W.2d 70, 73 (1949); *Pearson v. City of Washington,* 439 S.W.2d 756, 760 (Mo. 1969) ("Municipal corporations owe their origins to, and derive their powers and rights wholly from[,] the state."). Cities and towns have no inherent powers, but are confined to those expressly delegated by the state and those necessarily implied in the authority to carry out the delegated powers. *Premium Standard Farms, Inc. v. Lincoln Twp. of Putnam Cnty.,* 946 S.W.2d 234, 238 (Mo. banc 1997) (finding township had no express or implied authority to prosecute a nuisance action). Generally, the powers of municipal corporations may be altered at the discretion of the legislature creating them, and thus, they may be "restricted, diminished or withdrawn." 62 C.J.S. *Municipal Corporations* § 235 (2011). When the legislature authorizes a municipality to exercise a power and prescribes the manner of its exercise, "the right to exercise the power given in any other manner is necessarily denied." *Pearson,* 439 S.W.2d at 760.

The legislature originally provided cities and towns the power to sue. Section 65.260, RSMo 2000, states that "[e]ach township, as a body corporate, shall have power and capacity ... [t]o sue and be sued, in the manner provided by the laws of this state." But the legislature limited the exercise of that power in section 71.675 by declaring that cities and towns do not have the power to sue telecommunication companies as the representatives of class actions.

The principal opinion is correct that court rules supersede contradictory statutes that are procedural in nature. *Ostermueller v. Potter,* 868 S.W.2d 110, 111 (Mo. banc 1993). Court rules are used to "preserve the courts' existence and protect it in the orderly administration of its business." *State ex rel. Geers v. Lasky,* 449 S.W.2d 598, 601 (Mo. banc 1970) (internal citations omitted). Particularly in class actions, the Court has an interest in establishing rules that provide for the "advantages of economy of effort and uniformity of result." *State ex rel. Am. Family Mut. Ins. Co. v. Clark,* 106 S.W.3d 483, 489 (Mo. banc 2003). The rules established for class actions "promote judicial economy by permitting the litigation of the common questions of law and fact of numerous individuals in a single proceeding." *State ex rel. Union Planters Bank, N.A. v. Kendrick,* 142 S.W.3d 729, 735 (Mo. banc 2004).

The question in this case is whether section 71.675 is a valid exercise in legislative control over the substantive powers of Missouri's cities and towns or an intrusion into the separate powers of the courts to control the procedures followed in litigation. A class action representative bears significant responsibilities and risks. It must protect the interests of all class members fairly and adequately, and it must pay the fees and expenses of the class. *Id.* at 735, 738. A city is ill-equipped for this role from a governmental and a financial perspective.

The political purpose of each governmental subdivision is to represent the interests of its own voters, not the voters of other political subdivisions. Yet, in serving as a class representative, a city or town would extend its control over litigation that affects voters of other political subdivisions. In a like manner, a city or town serving as a class representative would be responsible, at least initially, for funding the litigation. This expenditure would not be for the benefit of the class representative's own taxpayers, but for taxpayers of other jurisdictions.

Section 71.675 does not tamper with the mechanics or functionality of our Rule 52.08 governing class action procedures. In fact, section 71.675 applies to both state and federal courts. It merely forbids cities and towns the substantive power of serving as a class representative. As noted above, there is a rational basis for the legislature to do this.

I would not hold that section 71.675 violates article V, section 5 of the Missouri Constitution. Accordingly, I would quash the preliminary writ of prohibition.